*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 26, 2015                518607
_____

In the Matter of the Claim of
    CYNTHIA VIAU,
                    Respondent.

NEW YORK STATE OFFICE OF COURT          MEMORANDUM AND ORDER
    ADMINISTRATION,
                    Appellant.

COMMISSIONER OF LABOR,
                    Respondent.
_____


Calendar Date:  January 13, 2015

Before:  Peters, P.J., Rose, Egan Jr. and Clark, JJ.


_____


        New York State Office of Court Administration, New York
City (Pedro Morales of counsel), for appellant.

        Cynthia Feathers, Glens Falls, for Cynthia Viau,
respondent.

        Eric T. Schneiderman, Attorney General, New York City (Mary
Hughes of counsel), for Commissioner of Labor, respondent.


_____


Peters, P.J.

        Appeal from a decision of the Unemployment Insurance Appeal
Board, filed May 31, 2013, which ruled, among other things, that
the New York State Office of Court Administration is liable for
unemployment insurance contributions on remuneration paid to
claimant and others similarly situated.

        In April 2003, the Office of Court Administration

(hereinafter OCA) notified claimant that she had passed the civil service examination qualifying her to work as a Spanish interpreter and placed her on a list of candidates eligible to fill full-time vacancies within OCA. She was also advised that, until her name was reached on the eligible list, she could submit an application to be put on OCA's registry of voucher paid interpreters from which interpreters are selected on an "as-needed basis." Claimant submitted an application, along with the required fingerprint forms and application fee, and OCA listed her on the registry, which consists of interpreters who have been found qualified by OCA to work on a per diem basis.[1] For years, claimant received only sporadic assignments. In December 2009, she started working in the Bronx Family Court where she continued to work every day until March 2012.

Upon claimant's application for unemployment insurance benefits, the Department of Labor found her to be an employee of OCA and, as such, found OCA liable for contributions on remuneration paid to claimant and others similarly situated. OCA objected on the ground that claimant was an independent contractor. After a hearing, an Administrative Law Judge upheld the initial determination, and the Unemployment Insurance Appeal Board affirmed. OCA appeals, arguing that, in concluding that claimant was an employee, the Board ignored the essential independence of per diem interpreters and relied on minor factors to find the existence of an employer-employee relationship. OCA further contends that, by its decision, the Board interfered with OCA's constitutional mission to deliver services in a responsible and cost-effective manner and failed to defer to the judgment of the Chief Administrative Judge in assessing the operational needs of the Unified Court System.

Whether an employer-employee relationship exists "is a factual issue for the Board to resolve and its decision will be upheld if supported by substantial evidence" (Matter of Ruano [Commissioner of Labor], 118 AD3d 1088, 1088 [2014], lv dismissed

---

[1] In 2012, OCA employed approximately 300 staff interpreters and maintained a registry of 700 per diem interpreters.

24 NY3d 1039 [2014]; see Matter of Columbia Artists Mgt. LLC [Commissioner of Labor], 109 AD3d 1055, 1056 [2013]).  "While no single factor is determinative, control over the results produced or the means used to achieve those results are pertinent considerations, with the latter being more important" (Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d 1132, 1134 [2014] [internal quotation marks and citations omitted]; see Matter of Guidotti [Swissport USA, Inc.-Commissioner of Labor], 119 AD3d 1265, 1265 [2014]).  We find that substantial evidence supports the Board's decision that OCA exercised sufficient supervision, direction and control over this claimant's work activities to establish an employer-employee relationship, but decline to extend this holding to others "similarly situated."

During the nearly 2½ years that claimant worked at the Bronx Family Court, she was required to work a set schedule from 9:30 a.m. to 4:30 p.m. (see Matter of Stewart [AML Partners, LLC-Commissioner of Labor], 118 AD3d 1198, 1199 [2014]).  When first assigned to that court, she was scheduled to report for a few weeks, but it was not long before claimant was scheduled monthly in advance (see Matter of Nance [NYP Holdings Inc.-Commissioner of Labor], 117 AD3d 1294, 1295 [2014]).  Although claimant did not have to accept assignments, once she was on the schedule, she could not take time off, nor was she allowed to send someone in her place (see Matter of DeRose [Winston Retail Solutions, LLC-Commissioner of Labor], 119 AD3d 1174, 1175 [2014]; Matter of Ruano [Commissioner of Labor], 118 AD3d at 1089); if she knew she needed time off, she was expected to tell her supervisor in advance so she would not be put on the schedule (see Matter of Duno [Anthony Stone Investigative & Sec. Servs., Inc.-Commissioner of Labor], 120 AD3d 1512, 1513 [2014]).  Upon arriving at work each morning, claimant reported to the senior court interpreter, who told her where to report.  OCA set claimant's rate of pay (see id. at 1513; Matter of Ruano [Legal Interpreting Servs.-Commissioner of Labor], 118 AD3d at 1089; Matter of Stewart [AML Partners, LLC-Commissioner of Labor], 118 AD3d at 1199; Matter of Nance [NYP Holdings Inc.-Commissioner of Labor], 117 AD3d at 1295) and, upon reporting to the court, she was paid — by direct deposit into her personal checking account — whether or not she actually provided interpreting services (see

Matter of FMI Interpreting Servs. [Hudacs], 192 AD2d 1006, 1006 [1993]).

In addition to the above indica of control over claimant's daily activities, OCA screened claimant for her language proficiency in the form of the civil service examination (see Matter of Ivy League Tutoring Connection, Inc. [Commissioner of Labor], 119 AD3d 1260, 1261 [2014]), it provided her with training in courtroom interpreting – procedures and protocols that she was required to abide by (see Matter of DeRose [Winston Retail Solutions, LLC-Commissioner of Labor], 119 AD3d at 1175; Matter of Booth [Eagle Intl., Inc.-Commissioner of Labor], 26 AD3d 692, 693 [2006]) – and she was occasionally observed by a supervisor to ascertain her performance in the courtroom. Although staff interpreters had some additional duties as compared to per diem interpreters, all interpreters performed the same core functions, and all had access to available work space and office equipment. In addition, claimant was required to comply with the Unified Court System's ethics manual, which was applicable to all staff and per diem interpreters (see Matter of Duno [Anthony Stone Investigative & Sec. Servs., Inc.-Commissioner of Labor], 120 AD3d at 1513; Matter of DeRose [Winston Retail Solutions, LLC-Commissioner of Labor, 119 AD3d at 1175), and complaints from judges or the public about claimant's work or professionalism were responded to by OCA (see Matter of FMI Interpreting Servs. [Hudacs], 192 AD2d at 1006), which then could impose various methods of discipline. Finally, although claimant could work for other entities, the record contains no "indicia of self-employment," i.e., that she independently advertised her services as an interpreter (Matter of Williams [Commissioner of Labor], 268 AD2d 621, 622 [2000]; see Matter of Barone [Commissioner of Labor], 257 AD2d 950, 951 [1999]; Matter of Bellson Floors [Sweeney], 239 AD2d 641, 642 [1997]) and, in fact, claimant testified that she did not have an interpretation business. Under these circumstances, and notwithstanding evidence in the record that could support a contrary conclusion, we find that OCA exercised more than incidental control over the results of claimant's work to support the Board's finding of an employer-employee relationship (see Matter of Ruano [Commissioner of Labor], 118 AD3d at 1089).

We further hold that the Board's decision did not improperly interfere with the powers or duties of the Chief Administrative Judge in assessing the operational needs of the Unified Court System.  While the administrative powers of the Chief Administrative Judge may be extraordinarily broad, such authority does not exempt compliance with the Unemployment Insurance Law (see Labor Law § 512).  Contrary to OCA's contention, the Board's decision does not impinge on any aspect of the functional or structural independence of the Judiciary and, therefore, its reliance on Matter of Maron v Silver (14 NY3d 230, 258-262 [2010]) is misplaced.  Although the Board determined that OCA was liable for contributions on remuneration paid to claimant and others similarly situated, "[t]he factual question of whether any other individuals actually perform the same work under the same conditions [as claimant is] left open for resolution in subsequently pursued cases, if there be any" (Matter of Robinson [New York Times Newspaper Div. of N.Y. Times Co.-Hartnett], 168 AD2d 746, 747-748 [1990], lv denied 78 NY2d 853 [1991]; see Matter of Booth [Eagle Intl., Inc.-Commissioner of Labor], 26 AD3d at 694).

Finally, contrary to OCA's contention, the Board did not ignore its prior precedent in determining that claimant was an employee rather than an independent contractor.  The prior determination upon which OCA now relies was not made by the Board, but by a reviewing examiner for the Department of Labor and, as such, the Board is not bound by it (see Matter of Bull [Yansick Lbr. Co.— Sweeney], 235 AD2d 722, 723-724 [1997], lv dismissed 90 NY2d 913 [1997]).

Rose, Egan Jr. and Clark, JJ., concur.

ORDERED that the decision is modified, without costs, by reversing so much thereof as found that all persons similarly situated to claimant are employees of the New York State Office of Court Administration, and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court