Clark, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed October 22, 2013, which ruled, among other things, that Cellular Sales of New York, LLC was liable for unemployment insurance contributions based on remuneration paid to claimant and others similarly situated.
In May 2010, Cellular Sales of New York, LLC entered into a contract with Aptuda, LLC, whereby Aptuda agreed to market and sell wireless services and related cellular phone accessories in a certain territory on behalf of Cellular Sales. The contract provided that Cellular Sales would pay Aptuda commissions based upon Aptuda’s sales of the products and that any persons hired by Aptuda would be employees of Aptuda and not Cellular Sales. At all relevant times, claimant was the owner and sole employee of Aptuda. In January 2012, Cellular Sales terminated its contract with Aptuda and entered into an employment contract with claimant. Claimant’s employment with Cellular Sales subsequently ended, at which time he applied for unemployment insurance benefits asserting that he had been employed by Cellular Sales from May 2010 until August 2012. Cellular Sales thereafter objected, asserting that claimant was an independent contractor, and not an employee, prior to January 1, 2012. The Department of Labor issued an initial determination finding that claimant and other persons similarly situated were employees, and an Administrative Law Judge sustained that determination following a hearing. The Unemployment Insurance Appeal Board affirmed, prompting this appeal by Cellular Sales.
We affirm. Whether an employer-employee relationship exists within the meaning of the unemployment insurance law “is a factual issue for the Board to resolve and its decision will be upheld if supported by substantial evidence” (Matter of Viau [New York State Off. of Ct. Admin.—Commissioner of Labor], 125 AD3d 1223, 1224 [2015] [internal quotation marks and citation omitted]; see Matter of Fahrson [Aaron Casey Ins. Agency—Commissioner of Labor], 125 AD3d 1185, 1186 [2015]). “While no single factor is determinative, control over the *1307 results produced or the means used to achieve those results are pertinent considerations, with the latter being more important” (Matter of Hunter [Gannett Co., Inc.—Commissioner of Labor], 125 AD3d 1166, 1167 [2015] [internal quotation marks and citations omitted]; see Matter of Jennings [American Delivery Solution, Inc.—Commissioner of Labor], 125 AD3d 1152, 1153 [2015]).
Here, substantial evidence in the record supports the Board’s decisions. The record establishes that Cellular Sales precluded sales representatives from selling competing products and its products outside of the “territory” absent its prior written consent, suggested, and in certain instances required, that products be sold at a minimum price, set sales goals for the sales representatives to attain and provided a script that sales representatives were to “[s]tick to ... on every customer opportunity” regarding a certain cellular phone. In addition, Cellular Sales specified a certain dress code and provided that any sales representative not meeting such dress code in its store would be “address [ed]” by a leader. Cellular Sales also required sales representatives to, among other things, complete certain mandatory training that it paid for, to “strictly comply” with its directives regarding use, disclosure and application of marketing information and to know and follow certain “procedures for the market.” In further support of the Board’s decisions, the record establishes that Cellular Sales dictated the number of sales representatives that would work in the store on a given day, provided each sales representative with a Cellular Sales email address and business cards, required, for a certain period of time, that sales representatives send customers thank you cards that it provided and supplied the sales representatives with products for demonstrations. The record also indicates that Cellular Sales reprimanded sales representatives regarding tardiness, held mandatory meetings, required sale representatives who chose to work in the store to submit their availability and requests for days off and, once a shift was assigned, required a sales representative to secure coverage if he or she could not work on the assigned shift.
Based upon this evidence, the Board could properly find that claimant and others similarly situated were employees of Cellular Sales notwithstanding the fact that the record contains proof that could support a contrary result (see Matter of Interlandi [Cremosa Foods Co., LLC—Commissioner of Labor], 70 AD3d 1150, 1150-1151 [2010]; Matter of O’Connor [2020 Powervision, Ltd.—Commissioner of Labor], 67 AD3d 1302, 1302-1303 [2009]; Matter of Greenspan [Adco Paper & Packag *1308 ing Co.—Commissioner of Labor], 31 AD3d 1092, 1093 [2006]; Matter of O’Toole [Biomet Marx & Diamond, Inc.—Commissioner of Labor], 13 AD3d 767, 768 [2004]; compare Matter of Rodriguez [2020 Video Voice Data, Ltd.—Commissioner of Labor], 58 AD3d 929, 930 [2009]). In addition, although Cellular Sales relies heavily upon the fact that it contracted with Aptuda and not claimant directly, the record supports the inference that claimant owned Aptuda for the purposes of working as a sales representative for Cellular Sales because Cellular Sales would not contract with him directly. Thus, like the Board, we do not find that this fact is dispositive, especially in light of the ample record evidence of an employer-employee relationship.
Lahtinen, J.P., Garry and Lynch, JJ., concur. Ordered that the decisions are affirmed, without costs.