Peters, P.J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed March 12, 2014, which, among other things, ruled that Language Services Associates, Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Language Services Associates, Inc. (hereinafter LSA) is engaged in the business of providing foreign language interpreting and document translation services. After claimant, a Cantonese and Mandarin interpreter, ceased working for LSA, she filed an application for unemployment insurance benefits. The Department of Labor issued an initial determination finding that claimant was an employee of LSA and that LSA was liable for unemployment insurance contributions based on remuneration paid to claimant and others similarly situated. LSA objected on the ground that claimant was an independent contractor and, following a hearing, an Administrative Law Judge sustained the Department’s determination. Upon administrative appeal, the Unemployment Insurance Appeal Board affirmed. LSA appeals, and we affirm.
“The existence of an employer-employee relationship is a factual issue for the Board to resolve and its decision will be upheld if supported by substantial evidence” (Matter of Lobban [Precinct Sec. & Investigations, Inc. — Commissioner of Labor], 131 AD3d 1294, 1294 [2015] [internal quotation marks and citations omitted]; see Matter of Isaacs [Speedy Media Assoc., *1099 LLC — Commissioner of Labor], 125 AD3d 1077, 1078 [2015]). The record establishes that LSA advertises for interpreters, like claimant, to provide translation services to its clients. Interpreters are screened for their experience and, if approved by LSA following an interview, they are placed on a roster for future assignments. Clients contact LSA directly to request the services of an interpreter, at which point LSA decides who to call from its pool of interpreters. Although interpreters are free to decline assignments, there was testimony that they are not permitted to substitute someone else in their place once an assignment is accepted. LSA provides interpreters with the requisite information for accepted assignments, and interpreters are advised by LSA, not the client, of any changes in assignments. Moreover, interpreters are prohibited from accepting future assignments from a client without obtaining LSA’s permission and are subject to penalties for arriving late or failing to appear for an assignment without providing LSA with notice and a reasonable explanation. LSA requires interpreters to submit invoices detailing the hours worked for each in-person interpretation assignment, pays interpreters directly and reimburses them for transportation expenses associated with assignments.
The record further reflects that LSA records and monitors telephone interpretation services to ensure that interpreters are adequately performing their services. To that end, LSA assigned interpreters, including claimant, to evaluate other interpreters’ telephone services. Claimant herself received feedback and instructions from LSA on how to improve her services, and she conducted, at LSA’s request, numerous evaluations of other interpreters’ services. Based upon these evaluations, interpreters are given a rating that could affect whether an interpreter receives future assignments from LSA. While record evidence could support a contrary result, the foregoing constitutes substantial evidence supporting the Board’s determination that an employer-employee relationship exists (see Matter of Karapetyan [CP Language Inst. Inc. — Commissioner of Labor], 134 AD3d 1309, 1309 [2015]; Matter of Viau [New York State Off. of Ct. Admin. — Commissioner of Labor], 125 AD3d 1223, 1224-1225 [2015]; Matter of Ruano [Legal Interpreting Servs., Inc. — Commissioner of Labor], 118 AD3d 1088, 1089 [2014], lv dismissed 24 NY3d 1039 [2014]; Matter of FMI Interpreting Servs. [Hudacs], 192 AD2d 1006, 1006-1007 [1993]).
Contrary to LSA’s further contention, the Board did not err in ruling that LSA is liable for contributions on remuneration *1100 paid to all others determined to be similarly situated to claimant (see Matter of Mitchum [Medifleet, Inc. — Commissioner of Labor], 133 AD3d 1156, 1157 [2015]). Finally, although certain guidelines were adopted by the Department of Labor to assist in determining the existence of an employment relationship within the translating and interpreting industry (see New York State Department of Labor, Guidelines for Determining Worker Status: Translating and Interpreting Industry, http:// www.labor.ny.gov/formsdocs/ui/LA318.20.pdf [last updated Jan. 2014]), no single factor is determinative, and we discern no inconsistency between the instant decisions and such guidelines, which expressly adopt the well-established common-law tests of master and servant (see Matter of Armison [Gannett Co., Inc. — Commissioner of Labor], 122 AD3d 1101, 1103 [2014], lv dismissed 24 NY3d 1209 [2015]; Matter of Lewis [Absolute Distrib., Inc. — Commissioner of Labor], 121 AD3d 1488, 1488 [2014]; Matter of Joyce [Coface N. Am. Ins. Co. — Commissioner of Labor], 116 AD3d 1132, 1135 [2014]).
Garry, Egan Jr., Rose and Devine, JJ., concur. Ordered that the decisions are affirmed, without costs.